IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BOB L. FRASER                                                                         PLAINTIFF

v.                          NO. 4:18-cv-00332 BSM/PSH

NANCY A. BERRYHILL, Acting Commissioner                 DEFENDANT
of the Social Security Administration

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to Chief United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

Plaintiff Bob L. Fraser ("Fraser") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon the findings of an Administrative Law Judge ("ALJ").

Fraser maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Fraser offers several reasons why, one of which has merit. Fraser maintains that the ALJ erred when she balked at the request to hear from Fraser's wife during the administrative hearing and thereafter failed to give her a reasonable opportunity to submit a written statement. The undersigned agrees.

The record reflects that Fraser filed an application for supplemental security income payments on June 17, 2016. In the application, he alleged that he is disabled and unable to work because of a bipolar disorder, an obsessive compulsive disorder, gout, and back problems. He supported his application, in part, with the progress notes from Daysprings Behavioral Health Services ("Daysprings") where he was seen for his mental impairments. The application was denied initially and on reconsideration.

On July 27, 2017, a hearing was held before an ALJ. See Transcript at 81-117. Fraser testified during the hearing that he lives with his wife and has worked with her on occasion. When he was asked about his visits to Daysprings, he testified as follows:

> Q. And can you tell me a little bit about – you've been going to Day Springs, looks like for two and a half, almost three years now?

---

[1] The question at bar is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

> A. Yes, ma'am.
>
> Q. Do you feel like they're the ones that know the most about your condition mentally?
>
> A. They know a lot about it. I feel like my wife knows more about it than they do, probably, but they know a lot.
>
> Q. Yeah, and you had told me that. It was real important that you wanted your wife to testify. I'm aware of that.
>
> A. Yeah.
>
> Q. But – but – you feel like she knows you more than anybody. That you do go to Day Springs, don't you?
>
> A. They know me a lot, too. Because I tell them about everything that's going on with me. (INAUDIBLE).

<u>See</u> Transcript at 93-94. At the conclusion of Fraser's testimony, the following exchange occurred between the ALJ and Fraser's attorney:

> [ALJ]: Okay, any – any other follow up?
>
> ATTY: No, Your Honor, but I did want to call [Fraser's] wife. I know you're not real thrilled about lay witnesses.
>
> ALJ: Well, I just don't – when somebody is very articulate and is able to testify, I don't find it necessary to hear from anybody else. If you want to have her write out a witness statement, and put it in the record, she can certainly do that, and I'll take a look at it. But I don't find it necessary to hear from anybody in addition.
>
> ATTY: I understand that. I just wanted to make a record, because – particularly if you find that he's not totally credible. That – I was wanting to call a witness to buttress up the credibility. (INAUDIBLE).

<u>See</u> Transcript at 100-101. A vocational expert was then called to testify. At the conclusion of the vocational expert's testimony, the following exchange occurred between the ALJ and Fraser's attorney:

3

>    ALJ: Okay, all right. Any follow up on anything, or anything further before we close?
>
>    ATTY: No, Your Honor. I'll try to get – I've already made my record on that. No, Your Honor.
>
>    ALJ: Okay, all right. Mr. Fraser, what I'm going to do, I'm going to go back and look at everything, taking into consideration your testimony. Once I make a decision I'll put the decision in writing, and I'll mail you a copy and mail your representative a copy. Ms. McKinnon, were you going to have the wife put in a witness statement that I need to look for?
>
>    ATTY: I can try, I'm not sure she'll be willing, and I'm not sure it will be adequate. But I will – I will ask her, Your Honor.
>
>    ALJ: Okay. Well, I'll – what I'll do, I won't hold the record open, but by the time I get the decision from editing – ready for me to edit, before I sign it, I will look to see if it's there.
>
>    ATTY: Yes, Your Honor.
>
>    ALJ: And if [it] is there, I'll take it into consideration. If it's not there, I'm not going to wait on it. Okay, anything – anything further before we close?
>
>    ATTY: No, Your Honor.

See Transcript at 115-116.

On August 7, 2017, or eleven days after the conclusion of the administrative hearing, the ALJ issued a decision in which she found that Fraser has not been under a disability since June 17, 2016, the day he filed his application. See Transcript at 9-24. In the decision, the ALJ framed the scope of the relevant evidence as follows:

> … There are prior applications, the last of which is currently on appeal at the federal court level. I am not re-evaluating any of the overlapping evidence from the prior adjudicated time period, and there are many records associated with that prior claim as well as the claim before it. Those records should not have been submitted or exhibited, but since they were, I am reviewing them for historical purposes only. … Any prior adjudicated time period opinion evidence is not evaluated in this decision.

4

See Transcript at 9. At step two of the sequential evaluation process, the ALJ found that Fraser has severe impairments that include lumbar degenerative disc disease, borderline intellectual functioning, a generalized anxiety disorder, and a bipolar disorder in partial remission. The ALJ assessed Fraser's residual functional capacity and found that he is capable of performing light work albeit with a number of mental and physical limitations. In making the assessment, the ALJ noted the following:

> ... I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 96-4p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.
>
> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

See Transcript at 15. The ALJ eventually discounted Fraser's statements concerning the intensity, persistence, and limiting effects of his impairments because the statements were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." See Transcript at 16.

Fraser filed a request for review with the Appeals Council. He maintained, in part, that the ALJ failed to develop the evidence. He did not, though, offer his wife's statement for the Appeals Council's consideration. The request for review was denied, and this case followed.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). As a part of the assessment, the ALJ should consider the statements of lay witnesses, particularly when the ALJ must evaluate a claimant's subjective complaints. See Willcockson v. Astrue, 540 F.3d 878 (8th Cir. 2008) (statements of lay persons regarding claimant's condition must be considered when evaluating her subjective complaints of pain).[2]

---

[2] This requirement is true even after the Commissioner adopted Social Security Ruling 16-3p effective March 28, 2016. The Ruling eliminates the use of the word "credibility" in making disability determinations and requires the ALJ to consider the following factors in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. The Ruling also provides, in part, the following:

> 2. Consideration of Other Evidence.
>
> If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. …
>
> …
>
> c. Non-Medical Sources.
>
> Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include public and private agencies, other practitioners, educational personnel, non-medical sources such as family and friends, and agency personnel. …

The ALJ also has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010).

The undersigned is not prepared to find that the ALJ fully developed the record. As will be more fully developed below, the ALJ erred when she balked at the request to hear from Fraser's wife during the administrative hearing and thereafter failed to give her a reasonable opportunity to submit a written statement.

Fraser represented that he is disabled and unable to work because of a bipolar disorder, an obsessive compulsive disorder, gout, and back problems. The impairments, like many impairments, have a subjective component, and the pain or work-related limitations they cause can be difficult to quantify. It is therefore understandable why the statement of a lay witness, like Fraser's wife, is of some relevance in determining the severity of pain or the work-related limitations caused by the impairments.

Fraser testified during the administrative hearing that his wife knew about his condition and, in fact, knew more about it than the medical professionals at Daysprings. Although his assertion is debatable, it is clear that she knew, or he believed she knew, much about his condition. Fraser thereafter affirmed his attorney's representation that it was "real important" Fraser's wife testify. Although it is debatable whether it was indeed "real important" for Fraser's wife to testify, she should have been allowed to testify, particularly in light of the fact that Fraser had the burden of proving his residual functional capacity. See Masterson v. Barnhart, 363 F.3d 731 (8th Cir. 2004).

Notwithstanding the foregoing, it is possible to find that the ALJ did not bar Fraser's wife from testifying. The ALJ simply stated that "when somebody is very articulate and is able to testify, I don't find it necessary to hear from anybody else." The undersigned, though, can find no authority to support such a proposition, and the Commissioner has cited none.

The ALJ then stated that she would consider a written statement from Fraser's wife. Had Fraser's wife been accorded a reasonable opportunity to submit a statement, a remand likely would not be warranted. The problem in this instance, though, is that Fraser's wife was never given a reasonable opportunity to submit a statement. The ALJ told Fraser that the record would not be held open for the submission of a statement. Instead, the ALJ stated that she would only consider the statement if it were submitted before she signed her decision, whenever that might be. She signed her decision a mere eleven days after the close of the administrative hearing.[3]

The ALJ's failure to consider a lay witness statement does not always result in a remand. For instance, in Buckner v. Astrue, 646 F.3d 549 (8th Cir. 2016), the ALJ did not expressly address a written statement from a claimant's girlfriend. The Court of Appeals found no reversible error because "the same evidence that the ALJ referred to in discrediting Buckner's claims also discredits the girlfriend's claims." See Id. at 560. Buckner is not controlling here, though. In Buckner, the girlfriend's statement was a part of the record. The statement from Fraser's wife is not a part of the record in this case, and the undersigned has no idea what she might represent in her statement.

---

[3] Fraser's attorney stated that Fraser's wife might not be willing to sign a written statement, and it might not be adequate. The undersigned has no idea why Fraser's wife might not be willing to sign a statement or why it might not be adequate.

It is entirely possible that a statement from Fraser's wife will not be accorded much weight and will not change the result in this case. Nevertheless, Fraser should be accorded a reasonable opportunity to submit his wife's statement. The opportunity to do so is of particular importance in this instance for two reasons. First, the ALJ could and did limit the scope of the relevant evidence and refuse to re-evaluate the evidence from the "prior adjudicated time period[s]." Second, the result in this case hinged, in part, on the evaluation of Fraser's subjective complaints.

Accordingly, the undersigned finds that the ALJ did not fully develop the record. It is therefore recommended that the Commissioner's decision be reversed, and this case be remanded pursuant to "sentence four" as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Upon remand, the ALJ should re-assess Fraser's residual functional capacity and accord him a reasonable opportunity to submit any lay witness statements. Judgment should be entered for Fraser.

DATED this 23rd day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE